UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALEXANDER L. FLIE,

       Petitioner,

v.                                       Case Number 07-10352
                                                     Honorable Thomas L. Ludington

JAN E. TROMBLEY,

       Respondent.
_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Alexander L. Flie, a state prisoner presently confined at Mid-Michigan Correctional Facility in St. Louis, Michigan, has filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2254. Petitioner was convicted of possessing 225 to 649 grams of cocaine and sentenced to a mandatory term of twenty to thirty years in prison. He alleges that he is incarcerated in violation of his constitutional rights to due process and a fair trial, his right to effective assistance of trial and appellate counsel, and his Fifth Amendment right not to incriminate himself. Respondent urges the Court to deny relief on the grounds that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, or without merit. For the reasons stated below, the petition will be denied.

**I**

**A**

About 1:00 a.m. on February 10, 2000, several police officers executed a search warrant at 6244 Artesian Street in Detroit, Michigan. Petitioner was present in the living room of the house. His mother, two adult brothers, and child were also present in the house. The police found cocaine,

a scale, plastic bags, and identification papers for Petitioner in the basement. Petitioner was arrested at the conclusion of the search and taken to a State police post where Detective Sergeant Kenneth Rochell asked him for personal data and general information. Petitioner answered Sergeant Rochell's questions and also made a nonresponsive statement that the drugs at the house were his and that his family had nothing to do with the drugs.

Petitioner was released from custody on the same day, but charged with possession with intent to deliver at least 225 grams, but less than 650 grams, of a substance containing cocaine. He moved to suppress his incriminating statement to the police, alleging that the police failed to read his constitutional rights to him before he made the statement. The trial court granted Petitioner's motion, but the prosecutor filed an interlocutory appeal, and the Michigan Court of Appeals reversed the trial court's decision. *See People v. Flie*, No. 232908 (Mich. Ct. App. Mar. 23, 2001). The case then proceeded to trial in Wayne County Circuit Court.

Sergeant Rochell testified at trial that several bags of suspected cocaine, a large scale, and a box of empty ziplock bags were found in the basement of Petitioner's home on February 10, 2000. Sergeant Rochell also informed the jury that Petitioner had said the drugs were his and that his family had nothing to do with the drugs.

State Trooper Terry Schimke testified that he found approximately $10,000 during the execution of the search warrant on Artesian Street. The money was stuffed in a sock behind the stairs going to the basement of the house. Trooper Schimke also testified that he was present when Sergeant Rochell questioned Petitioner at the State police post. He heard Petitioner tell Sergeant Rochell that the drugs were his and that his family had nothing to do with the drugs. Trooper Schimke also thought that Petitioner either said the money belonged to him or he asked whether the

police had seized his money.

Deputy Sheriff Ronald Whited testified that Petitioner was in the upstairs living room of the house on Artesian when the police forced their way into the house on February 10, 2000. Deputy Sheriff Whited opined that the cocaine found in the house was worth over $50,000 and that a mere user would not possess such a large quantity of cocaine. He also did not believe that a mere user would possess the kind of scale found in the house.

Deputy Sheriff Whited further testified that the police located a Michigan identification card in Petitioner's name and a temporary driver's license in his name. The photo identification card had an address of 27641 Lehigh Street, Inkster, but the temporary driver's license and a Sprint telephone bill, which was found in the southwest bedroom, had Petitioner's name and the Artesian Street address on them. Plastic bags of different sizes were found in the basement, and Deputy Sheriff Whited opined that the bags were consistent with the sale of narcotics.

Forensic scientist Gary Ginther testified that one of Petitioner's fingerprints was present on a plastic bag in evidence. That bag alone contained 233 grams of cocaine.

Petitioner did not testify or present any witnesses. His defense was that the prosecution had presented the jury with a weak circumstantial case. Defense counsel argued to the jury that the prosecution had failed to prove that Petitioner actually or constructively possessed the drugs. Counsel noted that the police did not reduce Petitioner's incriminating statement to writing, the prosecution could not prove when Petitioner's fingerprint was placed on the plastic bag, and even though Petitioner's identification was found near money and drugs, the basement was not a living quarter.

On April 4, 2002, a Wayne County Circuit Court jury found Petitioner guilty of a lesser-

included offense: possession of 225 to 649 grams of cocaine, Mich. Comp. Laws § 333.7403. The trial court sentenced Petitioner on May 9, 2002, to a minimum of twenty years and a maximum of thirty years in prison.

**B**

In an appeal of right, Petitioner argued that it was reversible error for the trial court to instruct the jury on possession of cocaine because the facts did not support the instruction, the instruction violated his constitutional rights to due process and notice of the charges, and he should have been acquitted of the delivery charge instead of convicted of simple possession as a compromise. He also alleged that the prosecutor (1) denigrated the defense theory and (2) made an improper civic duty argument. The Michigan Court of Appeals found no merit in the claims and affirmed Petitioner's conviction in an unpublished opinion. *See People v. Flie*, No. 242864, 2004 WL 595064 (Mich. Ct. App. Mar. 25, 2004).

Petitioner raised the same issues and two additional issues in the Michigan Supreme Court. The new issues alleged that Petitioner's Fifth Amendment right not to incriminate himself was violated when the police failed to read his constitutional rights to him and that he was denied effective assistance of appellate counsel during the appeal of right. On September 28, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Flie*, 471 Mich. 886 (2004) (table).

Petitioner subsequently filed a motion for relief from judgment in which he alleged that: (1) the police failed to advise him of his constitutional rights before he made incriminating statements and, therefore, his statements should have been suppressed; (2) his second trial attorney failed to conduct an adequate pre-trial investigation; (3) his appellate attorney was ineffective; and (4) there

was insufficient evidence to support his conviction. The trial court denied the motion, and the Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Flie*, No. 267672 (Mich. Ct. App. July 27, 2006). On December 28, 2006, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Flie*, 477 Mich. 973 (2006) (table).

## C

Petitioner filed his habeas corpus petition and supporting brief on January 23, 2007. The issues, as set forth in Petitioner's brief, are:

> I. Was Petitioner denied a fair trial when the prosecutor denigrated defense counsel and appealed to the jury['s] civic duty?
>
> II. Was Petitioner denied due process of law under the Federal Constitution when the trial court instructed the jury on the lesser included offense over counsel objection and the prosecutor[']s sole theory was delivery?
>
> III. Was Petitioner denied his right under the Sixth Amendment to effective assistance of counsel when counsel failed to conduct an adequate pre-trial investigation?
>
> IV. Was Petitioner denied his right under the Fifth Amendment to the Constitution when the police failed to advise Petitioner of his Miranda right?
>
> V. Was Petitioner denied effective assistance of counsel on direct appeal when counsel failed to raise two of Petitioner['s] claims?

Respondent contends that portions of Petitioner's first and second claims are procedurally defaulted because Petitioner failed to object to the claimed errors at trial. Petitioner agrees with Respondent that his claim about the prosecutor's improper civic duty argument and his claim that there was no factual support for the jury instruction on the lesser-included offense are procedurally defaulted and that he has not shown "cause" for the default or resulting prejudice. Thus, those

claims have been abandoned.

Respondent contends that Petitioner's third and fourth claims are procedurally defaulted because Petitioner did not raise those claims on direct review. The Court finds no merit in the claims, and procedural default is not a jurisdictional limitation. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)), *petition for cert. filed*, 78 U.S.L.W. 3448 (U.S. Jan. 21, 2010) (No. 09-877). The Court therefore will address the merits of the third and fourth habeas claims rather than conduct a procedural-default analysis of those claims.

## II

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on their merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., majority op. Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

## III

### A

Petitioner claims that he was denied a fair trial by the prosecutor's closing arguments. According to Petitioner, the prosecutor's remarks denigrated the defense theory by insinuating that defense counsel had tried to mislead the jurors. The Michigan Court of Appeals reviewed this claim on the merits and concluded that the prosecutor's comments did not rise to the level of misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). To prevail on a prosecutorial-misconduct claim, Petitioner must demonstrate that the prosecutor's remarks deprived him of a specific constitutional right or infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The misconduct must have been "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979).

The test for prosecutorial-misconduct claims is two-fold. *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006). First, a court must ask whether the prosecutor's conduct or remarks were improper. *Id.* at 516. Second, if the conduct or remarks were improper, the court must consider the following four factors to determine whether the impropriety was so flagrant as to warrant reversal: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.*

Petitioner claims that the following comments, made by the prosecutor during closing

-7-

arguments, denigrated defense counsel and the defense theory:

> Now you heard the defense attorney cross examine both officers who heard his statement. It is their mission to make you believe that this didn't happen. It's their mission, ladies and gentlemen. They have no other choice but to make you believe that these officers are liars. What else can they do? They know if you believe that this man confessed, it's over. They have no other option.
>
> That's what [defense counsel is] inferring to you[: Sergeant Rochell is] lying.
>
> And now she is gonna try and pin [Detective Schimke] in a corner and say well look he said something about money, he didn't. They're liars.
>
> Ladies and gentlemen, just keep in mind they have no other option but to make you believe it didn't happen.

Tr. Apr. 4, 2002, at 6–8.

> In his rebuttal argument, the prosecutor said:
>
> If these officers were gonna get together and say hey we're gonna frame this guy, wouldn't it be a real doozy[?]
>
> . . .
>
> It's the same thing every trial. The police are lying with these dope cases. Because the only witnesses we have are police officers. And if you have a case like this where the man confesses, they have no other option but to try and nitpick and point things out to tell you well they must be lying.

*Id.* at 23–26.

Attorneys may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), nor "argue that counsel is attempting to mislead the jury," *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008), *cert. denied*, __ S. Ct. __, 2010 WL 680527 (U.S. Mar. 1, 2010) (No. 09-461). They may, however, "argue the record, highlight inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). They also may point out the lack of evidence

-8-

supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005), and "argue that the jury should arrive at a particular conclusion based on the record evidence, including the conclusion that the evidence proves the defendant's guilt." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds by*, *Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000).

The prosecutor's remarks in this case were within acceptable bounds because he was merely pointing out that, to accept Petitioner's claim of innocence, the jurors would have to believe the police officers had lied. The remarks were not a personal attack on defense counsel. As explained by the Michigan Court of Appeals, "the prosecutor was vigorously pointing out the obvious – that [Petitioner] would have no credible defense unless the jury believed that the officers lied and that [Petitioner] had not confessed." *Flie*, Mich. Ct. App. No. 242864, at 2-3. The trial court, moreover, instructed the jurors that the attorneys' arguments were not evidence, but were meant to help the jurors understand the evidence and the parties' theories. Tr. Apr. 4, 2002, at 32.

Petitioner has not demonstrated that the prosecutor's conduct was so egregious as to render his entire trial fundamentally unfair. Therefore, he has no right to relief on the basis of his prosecutorial-misconduct claim.

**B**

Petitioner alleges that he was denied due process of law when the trial court instructed the jury on simple possession of cocaine even though the prosecution's theory was that Petitioner possessed the cocaine with intent to deliver it. As noted, Petitioner argued in state court that instructing the jury on the lesser-included offense was error because (1) the facts did not support the instruction, (2) Petitioner lacked notice of the charge, and (3) the instruction led to a compromise

verdict. Because Petitioner has abandoned his claim about the lack of factual support for the instruction, the only issues are whether the instruction on possession of cocaine violated Petitioner's right to notice of the charge and led to a compromise verdict.

**1**

A defendant in a criminal proceeding is entitled to "notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).

> A defendant's due process rights may be violated if the jury is instructed on an offense not included in the indictment and the defendant did not have notice that she might be charged with that offense. *See, e.g.*, *Schmuck v. United States*, 489 U.S. 705, 717–18 (1989). However, several federal courts have held that an instruction on a lesser included offense may be given over the defendant's objection, because the defendant has sufficient notice, when charged with the greater offense, that she may also have to defend against the lesser charge. *See, e.g.*, *Fransaw v. Lynaugh*, 810 F.2d 518, 529 (5th Cir.), *cert. denied*, 483 U.S. 1008 (1987); *United States v. Stolarz*, 550 F.2d 488, 491–93 (9th Cir.), *cert. denied*, 434 U.S. 851 (1977); *Asherman v. Meachum*, 739 F. Supp. 718, 720-21 (D. Conn.) (Cabranes, J.) (citing cases), *aff'd*, 923 F.2d 845 (2d Cir. 1990).

*Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000) (additional citations omitted).

The Michigan Court of Appeals determined in the appeal of right that possession of cocaine is a necessarily lesser-included offense of possession with intent to deliver cocaine. This Court is bound to follow the state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). Accordingly, because possession of cocaine is a lesser-included offense of possession with intent to deliver cocaine, Petitioner had sufficient notice of the offense for which he was convicted.

**2**

Petitioner contends that the jury instruction on possession of cocaine led the jurors to compromise their verdict. However, there is no evidence in the record that the jurors felt sympathetic toward Petitioner and hoped to give him a "partial victory," as defense counsel claimed they might do as a result of the instruction. Tr. Apr. 4, 2002, at 44. Nor is there evidence that some jurors thought Petitioner was guilty as charged, while other jurors thought he was innocent and, as a result, the jurors compromised by finding Petitioner guilty of the lesser-included offense.

Although there was testimony that the quantity of cocaine and the nature of the items found in Petitioner's residence were consistent with an intent to deliver the drugs, it is possible that the jurors thought there was insufficient evidence of Petitioner's intent. It is also possible that the jurors thought there was insufficient evidence of an intent to deliver the drugs. The jury could have concluded that Petitioner jointly possessed the cocaine with the other adults living in the house and that his relatives intended to use or sell the drugs. The Court therefore rejects the contention that the jury compromised its verdict as a result of the jury instruction on a lesser-included offense.

### C

Petitioner alleges next that he was denied effective assistance of counsel because his trial attorney failed to conduct an adequate pre-trial investigation. Petitioner maintains that trial counsel should have interviewed members of Petitioner's family, who would have implicated Petitioner's uncle, Oscar Nelson, in the crime.[1] The trial court was the last state court to address this issue on

---

[1] Mr. Nelson was arrested following three drug transactions with an undercover police officer. After his arrest, he informed the police that Petitioner was his source of cocaine. That information led to the execution of the search warrant at Petitioner's home. Tr. Apr. 3, 2002, at 6.

the merits. It determined that the testimony of Petitioner's proffered witnesses would not have affected the outcome of the trial.

To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" or if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The issue here is whether trial counsel conducted an adequate pretrial investigation. Petitioner alleges that his first trial attorney moved to have the prosecution produce Petitioner's uncle, Oscar Nelson, and Petitioner's two brothers. Mr. Nelson was an informant in the case, and Petitioner's two brothers have executed affidavits stating that Mr. Nelson sometimes slept in the basement of their home and admitted to them that the drugs in the basement belonged to him. The affidavits also state that the reason Mr. Nelson said the drugs belonged to Petitioner was that he (Mr. Nelson) wanted to get out of jail. Petitioner's first attorney withdrew from the case, and Petitioner contends that his second attorney failed to interview or subpoena his witnesses, including his uncle, mother, and brothers.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[T]he ultimate inquiry is whether the choice not to conduct additional investigation was 'reasonable[ ] in all the circumstances, applying a heavy measure of deference to counsel's judgments.' " *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 691).

It is evident that defense counsel made a reasonable decision not to interview or call Petitioner's relatives as witnesses because Petitioner admitted to the police that the drugs belonged to him and that his family had nothing to do with them. Furthermore, his fingerprint was found on a package of cocaine containing more than the amount of drugs required by statute, and there was some evidence that he acknowledged ownership of the money found in the house. In light of this overwhelming evidence of guilt and the fact that Petitioner's live-in relatives could have been viewed as joint possessors of the cocaine, counsel's failure to investigate Petitioner's family members as potential witnesses did not amount to deficient performance. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

Moreover, even if defense counsel's performance were deficient, Petitioner has not shown that the deficient performance prejudiced the defense. It is unlikely that Petitioner's uncle would have admitted the drugs were his or that he lied to the police, and the jury likely would have perceived Petitioner's mother and brothers as being biased if they had attempted to shift blame from Petitioner to his uncle.

There is not a reasonable probability that, but for counsel's failure to interview or produce Petitioner's family members as witnesses, the result of the proceeding would have been different.

Consequently, trial counsel was not ineffective for allegedly failing to conduct an adequate pretrial investigation involving Petitioner's relatives.

**D**

Petitioner contends that his right not to incriminate himself was violated because the police failed to advise him of his constitutional rights after arresting him and before he made incriminating remarks to the police. The Michigan Court of Appeals decided that the police officer's questions were "routine booking questions" and not interrogation for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966). The Court of Appeals also determined that Petitioner had not shown that he was particularly susceptible to the officer's questions or that the officer used his questions as a "mere pretext" for eliciting incriminating information.

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[P]rotection of the privilege against self-incrimination during pretrial questioning requires application of special 'procedural safeguards.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990) (quoting *Miranda*, 384 U.S. at 444). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. "Unless a suspect 'voluntarily, knowingly and intelligently' waives these rights, *ibid.*, any incriminating responses to questioning may not be introduced into evidence in the prosecution's case in chief in a subsequent criminal proceeding." *Muniz*, 496 U.S. at 589.

The parties concede that Petitioner was "in custody" when he made his incriminating statements and that no one read his constitutional rights to him. The only issue is whether the police

-14-

officer's questions to Petitioner amounted to interrogation.

> "Interrogation" includes "express questioning or its functional equivalent." *Rhode v. Innis*, 446 U.S. 291, 300–01 (1980). The "functional equivalent" of express questioning includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Pennsylvania v. Muniz*, 496 U.S. 582, 600–01 (1990) (citing *Innis*, 446 U.S. 291).

*Tolliver v. Sheets*, 594 F.3d 900, 917 (6th Cir. 2010) (additional citations omitted).

Detective Sergeant Kenneth Rochell testified at a pretrial hearing that Petitioner was taken to the State police post after his arrest and placed in a holding cell. Sergeant Rochell then proceeded to acquire some general information from Petitioner, such as his name, date of birth, and height. Petitioner answered the questions and also indicated that the drugs at the house were his and his family had nothing to do with it. Sergeant Rochell did not ask Petitioner who owned the drugs before Petitioner made his incriminating statement. Nor did Sergeant Rochell ask any questions other than the ones pertaining to personal information. Tr. Jan. 12, 2001, at 18-19.

Petitioner nevertheless contends that a routine question such as where he lived was likely to elicit an incriminating response because drugs were found in his residence. It is true that, "[e]ven a relatively innocuous series of questions may, in light of the factual circumstances and the susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response." *United States v. Avery*, 717 F.2d 1020, 1025 (6th Cir. 1983). The questions in this case, however, did not relate to the crime, nor have the force of an interrogation.

Sergeant Rochell did admit to following a routine of acquiring "pertinent information just to see where the person is at, whether or not they are willing to be cooperative, [and] so forth." Tr. Jan. 12, 2001, at 20. Sergeant Rochell also testified that this routine entails giving *Miranda* warnings after he acquires "all the information references, height, weight, date of birth, Social

Security numbers, phone numbers, [and] things like that." *Id.* In this particular case, however, Petitioner interrupted him as he inquired about Petitioner's date of birth, height, and so forth. Petitioner stated that the "dope" was his without any prompting from Sergeant Rochell. *Id.* at 27, 30. Detective Terry Schimke testified at the hearing that he was present while Sergeant Rochell questioned Petitioner and that Sergeant Rochell had not asked any questions about the case when Petitioner stated that the "dope" was his and that nobody at the house was involved. *Id.* at 35.

The location of the interview (the State police station), the nature of the information sought (personal data), and the fact that the police documented the interview lends support for the conclusion that Sergeant Rochell's questions did not qualify as custodial interrogation. *See United States v. Pacheco-Lopez*, 531 F.3d 420, 424–25 (6th Cir. 2008). The questions were routine booking questions, which fall outside the protections of *Miranda* and need not be suppressed. *Muniz*, 496 U.S. at 602. Furthermore, there is no evidence that Petitioner had any special susceptibilities, which Sergeant Rochell knew, or reasonably should have known, were likely to elicit an incriminating response. The state appellate court's conclusion—that *Miranda* was not implicated—therefore did not amount to an unreasonable application of *Miranda* or *Muniz*.

### E

The fifth and final claim alleges that Petitioner's appellate attorney was ineffective for failing to raise Petitioner's Fifth Amendment claim and his claim about trial counsel in the appeal of right. "Ineffective assistance of appellate counsel claims are governed by the same *Strickland* standard as ineffective assistance of trial counsel." *Webb v. Mitchell*, 586 F.3d 383, 398 (6th Cir. 2009) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)), *petition for cert. filed* (U.S. Feb. 1, 2010) (No. 09-7207). The "deficient performance" prong requires showing that appellate counsel made an

objectively unreasonable decision to raise other issues in place of Petitioner's claims about trial attorney and the right to remain silent; in other words, Petitioner must show that his claims are clearly stronger than the issues counsel did present to the Michigan Court of Appeals. *Thompson v. Warden, Belmont Corr. Inst.*, __ F.3d __, Nos. 08-3743 & 3744, slip op. at 5, 2010 WL 957749 (6th Cir. Mar. 18, 2010) (citations omitted).

To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his attorney's unreasonable failure to raise his claims on appeal, he would have prevailed. *Id.* at 5-6 (quoting *Robbins*, 528 U.S. at 285). "Furthermore, when reviewing the actions of appellate counsel, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Id.* at 6 (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Strickland*, 466 U.S. at 689)).

The trial court was correct in concluding that Petitioner's claim about trial counsel and his challenge to the admission of his statements to the police are devoid of merit. Appellate counsel, moreover, stated in a letter to Petitioner on September 6, 2003, that

> [t]he police can ask booking questions without giving Miranda rights. Only when they ask about the case – like what happened? – do they have to give rights. I was actually surprised by the judge's ruling. I thought she was wrong. So, obviously I think the Court of Appeals was right and I do not think you have an issue there. The police said you just volunteered the information. If they are lying about how it happened well guess who is believed. The judge did not say she did not believe the cops.
>
> . . .
>
> I raised all the issue[s] I thought important, thus I do not think you have any more issues to raise.

It is apparent from this letter that appellate counsel made a strategic decision about which

-17-

claims to raise. Petitioner has not overcome the presumption that counsel's decision might be considered sound strategy. *Strickland*, 466 U.S. at 689.

Nor has Petitioner persuaded the Court that he would have prevailed had he raised the omitted issues in the appeal of right. His Fifth and Sixth Amendment claims lack merit, and "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

**IV**

The state court decisions on the merits of Petitioner's claims were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**, because reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, if Petitioner chooses to appeal this decision, he may do so without further authorization because he was granted leave to proceed *in forma pauperis* in this Court. Fed. R. App. P. 24(a)(3).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 24, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 24, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS